### JUDGE v. NORTHERN PAC. RY. CO.

(Circuit Court, D. Oregon. September 4, 1911.)

No. 3,705.

CARRIERS (§ 112*)—ACTION FOR LOSS OF PROPERTY IN TRANSIT—DEFENSES—ILLEGALITY OF CONTRACT.

When a carrier accepts and takes charge of property for transportation, it becomes the bailee thereof, and the law imposes upon it, in the absence of a binding contract limiting its liability, the duties of either a common or private carrier, according to the facts, for the violation of which it will be liable, regardless of the legal sufficiency of the contract of carriage.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 480, 484, 485; Dec. Dig. § 112.*]

At Law. Action by Charles Judge against the Northern Pacific Railway Company. On demurrer to portion of answer. Sustained.

Frank C. Hesse, for plaintiff.
George T. Reid, J. W. Quick, and L. B. da Ponte, for defendant.

BEAN, District Judge. Action to recover damages for the death of an animal belonging to the plaintiff while being carried on defendant's train between Seattle and Portland. It appears from the complaint that in May, 1910, the plaintiff, who was the owner of a chimpanzee trained to perform in theaters and vaudeville, was under contract with Sullivan & Considine, who were operating various vaudeville theaters in the Northwest, to exhibit the animal at such theaters, and particularly at Seattle and Portland, for a stipulated sum per week, including transportation for himself and the animal; that, in order to transport their artists, actors, and vaudevillians, together with their baggage and property, Sullivan & Considine purchased of the defendant 25 or more tickets for use between Seattle and Portland, which entitled them to the use of a special baggage car suitable for the transportation of all baggage, animals, paraphernalia, and scenery

---

of any and all of their actors and performers, but when the plaintiff, who was entitled to transportation for himself and animal on such tickets, tendered the animal to the railway company, the special baggage car provided by it was not in suitable or proper condition to convey the same, and, by arrangement with the agents of the defendant, it was put in the general baggage car, and, while en route to Portland, was killed through the negligence of the defendant's agents in placing it against the radiator and carelessly and negligently turning on the steam.

The defendant, after denying many of the material allegations of the complaint, pleads as one, of its separate defenses in substance that under its tariff, as filed with the Interstate Commerce Commission and in force at the time of the alleged shipment, it was unlawful for it to carry, as baggage, live animals as part of theatrical paraphernalia or property, except in a special car, and then only upon the execution of a release relieving the company from liability as a common carrier and from all claims or demands whatsoever which may arise or accrue by reason of any or all loss or damages in the transportation thereof, and that the contract of carriage alleged in the complaint was in violation of this provision, and consequently of the interstate commerce act, because it granted the plaintiff special rights and privileges not accorded to other shippers similarly situated.

The plaintiff has demurred, on the ground that this matter constitutes no defense, and in my opinion the demurrer should be sustained. If the animal was delivered to and accepted by the defendant for transportation, and it undertook the performance of such carriage, it thereby assumed the duties of either a common or private carrier —a question not necessary to consider at this time—in reference thereto, and cannot escape liability for a failure to discharge its duty while the animal was in its possession, on the ground that the initial contract of carriage was illegal. Insurance Cos. v. Carriers' Co., 91 Tenn. 537, 19 S. W. 755; Pond-Decker Lmbr. Co. v. Spencer, 86 Fed. 846, 30 C. C. A. 430; Merchants' Cotton Ex. v. N. A., Ins. Co., 151 U. S. 368, 14 Sup. Ct. 367, 38 L. Ed. 195. A contract of carriage in violation of the interstate commerce law is void and cannot be enforced, and probably the carrier, after having entered upon the performance, may withdraw therefrom without being liable for breach of the contract. Melody v. Gt. Nt. Ry., 127 N. W. 543, 30 L. R. A. (N. S.) 568.

But when a carrier accepts and takes charge of property for transportation, it becomes the bailee thereof, and the law imposes upon it, in the absence of a binding contract limiting its liability, the duties of either a common or private carrier according to the facts, for a violation of which it will be liable, and this regardless of the legal sufficiency of the contract of carriage. The liability in such cases arises out of the possession of the property by the carrier under a contract of affreightment, and the duties and obligations which the law imposes upon it in reference thereto, and not wholly out of the agreement under which the property was delivered to and accepted by it. The Interstate Commerce Commission forbids rebates, special

rates, preferences, etc., and makes all agreements in reference thereto void, but it does not make the contract of affreightment otherwise void, and there is nothing in the law which will excuse the carrier from liability when it has accepted property for transportation under such a contract. The demurrer as to the third affirmative defense is therefore sustained, and in all other respects overruled.